STATE of Alaska,
Appellant/Cross-Appellee,

v.

Vern T. WEISS, et al.,
Appellee/Cross-Appellant.

Nos. S-653, S-678.

Supreme Court of Alaska.

Oct. 4, 1985.

G. Thomas Koester, Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellant/cross-appellee.

Stephen C. Cowper, Fairbanks, for appellee/cross-appellant.

Russ Winner, McGrath & Associates, Anchorage, for amicus curiae Cook Inlet Region, Inc.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

The State of Alaska ("state") appeals from a judgment of the superior court holding that the state breached its duty as trustee of federal mental health grant lands when the legislature redesignated the property as "general grant land." For the reasons set forth below, we affirm the holding to this extent, but reverse the superior court's conclusion that the redesignation legislation was valid.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1956 the United States Congress passed the Alaska Mental Health Enabling Act (AMHEA) which, insofar as it concerns this case, granted the Territory of Alaska one million acres of federal land to be held in public trust to help effectuate the creation and operation of mental health care facilities in Alaska. Pub.L. No. 84-830, 70 Stat. 709 (1956). Section 202(e) of the Act specifically provides:

*All lands granted* to the Territory of Alaska under this section, together with the income therefrom and the proceeds from any dispositions thereof, *shall be administered by the Territory of Alaska as a public trust* and such proceeds

and income shall first be applied to meet the necessary expenses of the mental health program of Alaska. Such lands, income and proceeds shall be managed and utilized in such manner as the Legislature of Alaska may provide. Such lands, together with any property acquired in exchange therefor or acquired out of the income or proceeds therefrom, may be sold, leased, mortgaged, exchanged, or otherwise disposed of in such manner as the Legislature of Alaska may provide in order to obtain funds or other property to be invested, expended or used by the Territory of Alaska. The authority of the Legislature of Alaska under this subsection shall be exercised in a manner compatible with the conditions and requirements imposed by other provisions of this Act. (emphasis added)

The state managed these lands without maintaining a separate account until 1978. The Alaska State Legislature made its practice law in 1978 when it passed the following statutory provision:

### REDESIGNATION AND DISPOSAL OF MENTAL HEALTH LAND

(a) Land granted to the state under the Mental Health Enabling Act of 1956, 70 Stat. 709, and patented to or approved for patent to the state on July 1, 1978 and land designated as mental health land which was received by the state in exchange for land granted under that federal land grant is redesignated as general grant land and shall be managed and disposed of by the Department of Natural Resources under applicable provisions of law.

Ch. 181, § 3(a), SLA (1978).

Alaska has provided continuous mental health care since statehood. The record indicates that between 1959 and 1982 the state spent over $222,000,000 on mental health care. Generally speaking, there has been a constant increase from 1959 to the present in mental health expenditures: slightly less than $1,200,000 was expended in 1959, and slightly more than $29,000,000 was expended in 1982. The record does not indicate how much of the trust land at issue has been disposed of, nor the total value of such disposed land. In the state's answer to the complaint, it alleges that "state expenditures for mental health purposes exceeded revenues from mental health grant lands in all years for which revenues from those lands were tabulated separately." The record does indicate that as of 1973, total revenues from these mental health trust lands amounted to $19,555,-582. The state's total expenditures to that point amounted to $66,726,176.

Weiss *et al.* filed a class action in 1982 alleging that the state breached the public trust by 1) failing to account for revenues realized, 2) using revenues for purposes other than mental health care and 3) passing legislation redesignating the property "general grant land." Plaintiffs sought declaratory relief invalidating the redesignation legislation; injunctive relief compelling the state to administer the trust according to the law; general relief establishing a trust account "for the receipt of funds generated from all lands selected by the State of Alaska under the aforesaid mental health land grant...."

The superior court ruled that invalidation of the redesignation legislation was not an available remedy, based on *State v. University of Alaska*, 624 P.2d 807, 815 (Alaska 1981). However, the court did hold that the state breached its duties as trustee by removing the federal grant lands from the trust. As a remedy, the court ordered that

[t]he public trust established by P.L. 84–830, 70 Stat. 709, shall recover from the defendant State of Alaska an amount equal to the fair market value of all lands conveyed from the trust as of the date of conveyance, plus prejudgment interest from the date of each conveyance. For the purposes of this judgment, all lands remaining in the trust as of July 19, 1978, shall be considered as having been removed from trust status by the State of Alaska on that date....

The court also ordered a set-off for all monies spent by the state on mental health care.

The state appeals from the judgment, except the holding that the redesignation legislation was valid. Weiss *et al.* cross-appealed the trial court's failure to rule the legislation invalid.

## II. DID THE STATE BREACH THE PUBLIC TRUST CREATED BY CONGRESS WHEN IT REDESIGNATED PROPERTY IN THE TRUST AS "GENERAL GRANT LAND?"

### A. Nature of the Trust.

The state argues, essentially, that the redesignation is of no legal consequence because the state has always provided public mental health programs in the past and, implicitly, will provide them in the future. The state maintains that providing such programs fulfills its obligations according to AMHEA, freeing the grant lands for other public purposes. Textual support for this position comes from the portion of Section 202(e) which states that "proceeds and income shall first be applied to meet the necessary expenses of the mental health program of Alaska." It is suggested that this language means Congress intended that the land grant serve as a revenue base guarantee. Great emphasis is placed on the legislative history of AMHEA which establishes that Congress did not wish to limit the use of grant lands *exclusively* to mental health programs.[1]

■ Despite these observations, we think it irrefutable that Congress intended to create a trust, to be based on a corpus of one million acres of federal land. It is a commonplace of the law that without trust property there can be no trust. Restatement (Second) of Trusts § 74 (1959).[2] When the state, through the legislature, altered the status of the property grant the trust was thereby effectively terminated. The state, as trustee, had no power to do this and consequently breached its duty to preserve the corpus.[3] The fact that the state has provided mental health care in the past and will most likely do so in the future is no justification for termination of the trust. Whether a beneficiary can rely on the *bona fides* of a trustee to continue voluntarily to uphold the terms of a defunct trust is quite beside the point. We decline the opportunity to encourage the state, or any trustee for that matter, to determine unilaterally when to terminate a trust without specific authority to do so.

### B. Remedy.

■ Having concluded that the state breached the trust, we find it necessary on the facts of this case to invalidate the redesignation statute, Ch. 181, § 3(a), SLA (1978). *State v. University of Alaska*, 624

---

1. The debates in the House and Senate are too lengthy to reproduce in their entirety here, but certain remarks are representative of the discussions. Senator Jackson commented that "[t]he income from sales or leases will be used to support the mental health program in Alaska. The income will be held in trust for that purpose. Any money received over and above the need for the mental health program may be used for other public purposes." He further noted that the language change was not of a fundamental nature, and thus said that, "[t]he purpose of granting 1 million acres is the same as in all other similar grants, such as the public school land-grant program." 102 Cong.Rec. 9761 (June 7, 1956).

   We note that the language in the federal grant was changed from designating the proceeds of the land grant to be used as a public trust for Alaska's mental health program, to saying that the proceeds "shall first be applied to meet the necessary expenses of the mental health program" only because of worry among members of Congress that the land may actually have a value far in excess of the necessary health care expenses. The record in this case shows that income from the land grant was actually less than state expenditures for mental health programs.

2. Section 74 provides: "A trust cannot be created unless there is trust property."

3. Our reliance upon basic trust law principles finds ample support in the precedents of this court and the United States Supreme Court. *See Lassen v. Arizona*, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967); *State v. University of Alaska*, 624 P.2d 807 (Alaska 1981). Both *Lassen* and *University of Alaska* involved federal grants to be used by states for school purposes. Those cases stand for the proposition "that the same private trust law principles are to apply to federal land granted to the states for school purposes." *University of Alaska*, 624 P.2d at 813. There is no reason to treat federal lands granted for mental health purposes differently.

P.2d 807, 815 (Alaska 1981) does not compel a different result. In that case, the federal government had granted 100,000 acres to the state "for the exclusive use and benefit" of the University. *Id.* at 811. Years after the grant, the state included 5,040 acres of the trust land in a state park. This action was not in itself a breach of the trust so long as the University was paid fair market value for the land. We inferred that the legislature intended to pay the University for this disposition, stating:

> It is also logical to assume that the legislature intended to compensate the University for the loss of its land. This view gives the statute creating [the park] a reading that is in accord with the well recognized canon of statutory construction that, when possible, legislation should be construed in a way that upholds its validity.

524 P.2d at 816.

Unlike the situation in *University of Alaska,* the present case does not involve a disposition of a portion of trust lands for a specific use. Instead, the entire corpus of the trust is intermingled with the general grant lands of the state. No particular use of the trust lands is specified and it may be years before much of the land is used. While it was reasonable to infer a legislative intent to pay for 5,040 acres for which there was a present park land use in *University of Alaska,* it is not reasonable to infer that the legislature meant to pay for a quantity of trust land approaching one million acres for which in large part there is no present use. Thus, the payment remedy imposed in *University of Alaska* is not appropriate here. Because the state in passing the redesignation act went beyond the power which had been granted it with respect to the trust lands by Congress, the redesignation act must be declared invalid.

It follows from our conclusion that the redesignation legislation is invalid that the trust must be reconstituted to match as nearly as possible the holdings which com-

prised the trust when the 1978 law became effective. The case is remanded so that requisite findings can be made. We take this opportunity to provide some guidance to the trial court to simplify its task.

Those general grant lands which were once mental health lands will return to their former trust status. In the event exchanges have been made, those properties which can be traced to an exchange involving mental health lands will also be included in the trust. To the extent that former mental health lands have been sold since the date of the conveyance the trust must be reimbursed for the fair market value at the time of sale. In calculating the total amount owed, the trial court should grant a set-off for mental health expenditures made by the state during the same period. In the event that expenditures exceeded the value of lands sold, the state need not furnish cash as part of the reconstitution. The goal is to restore the trust to its position just prior to the conveyance effected by the redesignation legislation.[4]

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.

MOORE, J., not participating.

---

**4.** Amicus raises questions regarding the title held by conveyancees and bona fide purchasers of mental health lands. In view of our disposi-

tion of this case, we deem it unnecessary to address those issues at the present time.