**J. Michael JAMES, d/b/a James Farms, Appellant,**

v.

**Joan H. McCOMBS, Appellee.**

No. S–6685.

Supreme Court of Alaska.

Jan. 24, 1997.

Clarification and Reconsideration Denied Feb. 26, 1997.

---

Dennis P. James and Keith A. Christenson, Anchorage, for Appellant.

John G. Davies and Allen G. Kingman, Wasilla, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, EASTAUGH and FABE, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. *INTRODUCTION*

This appeal arises out of a purchase of the agricultural interest in a parcel of land originally held as part of the corpus of the Alaska Mental Health Trust and subsequently ac-

quired by Joan McCombs. J. Michael James, who purchased the agricultural interest in land from McCombs, sued McCombs based on claims relating to the Mental Health Trust Lands litigation (*State v. Weiss*, 706 P.2d 681 (Alaska 1985)), which he argues impaired the title he received when he purchased the land. James contends that this alleged impairment breached a covenant in the deed he received from McCombs, thus entitling him to rescission.

McCombs counterclaimed on the unpaid principal and accrued interest owed under the promissory note executed by James in connection with his purchase of the land. Based on his contention that the title he received at the time of the purchase was impaired, James asserted failure of consideration as a defense to McCombs' suit on the note.

On cross-motions for summary judgment the superior court ruled for McCombs on both James's claim and McCombs' counterclaim. We affirm.

## II. *FACTS AND PROCEEDINGS*

In November 1982 McCombs acquired Tract 29 of the Point McKenzie Dairy Farm Project from the State of Alaska. The purchase was made subject to contractual obligations to the State regarding the use and improvement of the land.

In November 1984 McCombs sold the agricultural interest in Tract 29 to James. McCombs executed a warranty deed for the property to James, and in exchange received a promissory note from him for $94,000, secured by a deed of trust on the property. The warranty deed and deed of trust were subject to McCombs's contracts with the State regarding the land, including James's assumption of a clearing loan and his agreement to indemnify McCombs for that obligation.[1]

In 1990 it became apparent that James's dairy farm would fail. In April 1991 James informed Doyle McCombs, appellee's husband, that he would make no further pay-

---

**1.** The parties did not obtain title insurance on the tract and James did not undertake a title search. In August 1984, a *lis pendens*, applying to Tract 29, relating to the *State v. Weiss* case was filed in the Palmer Recording District.

ments on the note. James subsequently filed suit against McCombs for breach of warranty in the warranty deed. McCombs then counterclaimed for the principal and interest owed on James's promissory note.

In June 1991 James reached a settlement with the State under which he agreed to convey his interest in Tract 29 of the Point McKenzie project, as well as two additional tracts not acquired from McCombs. He also transferred title and possession of cattle, equipment, crops and milk checks, as well as the profits and proceeds derived from them. In exchange, James received from the State $2.4 million in forgiveness of loans and future obligations, and a new loan of $700,000 which was also subsequently forgiven.

The parties then filed cross-motions for summary judgment and the superior court granted summary judgment to McCombs on both James's claim and McCombs' counterclaim. In so ruling, the superior court concluded that James was not entitled to rescission, since he had already reconveyed his interest to the State and therefore could no longer tender it back to McCombs. Though basing its decision to award summary judg-

ment on this rationale, the superior court additionally concluded that James's complaint was "substantively deficient as well." The superior court also granted McCombs's motion for summary judgment on the grounds that James's defense to the counterclaim sounded in contract and thus was time-barred by the six-year statute of limitations.

██ We affirm the superior court's order granting summary judgment for McCombs on both James's claim and her counterclaim.[2]

## III. *DISCUSSION*

### A. *The concepts on 'cloud of title' and 'marketable title' are inapplicable given the facts of the instant case.*

██ We first address James's appeal of the superior court's dismissal of his claim for breach of warranty in the deed. James's suit for rescission of the sale of Tract 29 is based on a theory that a covenant in the warranty deed was breached. It is unclear, however, which particular covenant James relies upon to support this contention.[3] Regardless, even if the alleged 'cloud on title' ever existed[4] we hold that it does not bear on the issue

**2.** Our rationale for affirmance differs from the superior court's analysis of the relevant issues. This court may affirm a decision on grounds different than those advanced by the trial court. *Dixon v. Dixon,* 747 P.2d 1169, 1175 n. 5 (Alaska 1987). We are not bound by the reasoning of the trial court and can instead affirm a grant of summary judgment on alternative grounds. *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992).

We review the superior court's order *de novo* since it presents questions of law. *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

**3.** James's briefing sheds little light on this question. We note that only four covenants potentially exist in the relevant warranty deed. AS 34.15.080 provides that "[n]o covenant is implied in a conveyance of real estate whether the conveyance contains special covenants or not." Therefore, aside from any express covenants contained in the deed, the only covenants that exist are those present by virtue of statute; namely, the covenants of seisin, of freedom from encumbrances, and of warranty. AS 34.15.030(b) describes the covenants implied in the warranty deed between grantor and grantee:

(1) that at the time of the making and delivery of the deed the grantor is lawfully seized of an indefeasible estate in fee simple to the premises described, and has the right and power to

convey the premises [seisin]; (2) that at the time of making and delivery of the deed the premises are free from encumbrances; and (3) that the grantor warrants the quiet and peaceable possession of the premises, and will defend the title to the premises against all persons claiming the premises [warranty].

In the instant case, the covenant to provide further assurances of title was expressly included in the deed.

**4.** James's assertion that *State v. Weiss,* 706 P.2d 681 (Alaska 1985), casts a 'cloud on [his] title' is highly questionable. Though we need not reach this particular issue to decide this case, we note that in *Weiss* this court specifically said:

Those general grant lands which were once mental health lands will return to their former trust status. In the event exchanges have been made, those properties which can be traced to an exchange involving mental health lands will also be included in the trust. To the extent that former mental health lands have been sold since the date of the conveyance the trust must be reimbursed for the fair market value at the time of sale. In calculating the total amount owed, the trial court should grant a set-off for mental health expenditures made by the state during the same period. In the event that expenditures exceeded the value of lands sold,

at hand, since in this case the deed has already been delivered. We base this conclusion on settled principles of property and contract law.

■ The failure to deliver 'marketable title' is a breach of the warranty implied in a contract to sell land. A title is not 'marketable' if there is a reasonable probability that the purchaser will be subject to a lawsuit. *Ficke v. Alaska Airlines, Inc.,* 524 P.2d 271 (Alaska 1974). A 'cloud on title' indicates that such a probability exists. If there is a 'cloud on title,' the seller is unable to deliver 'marketable title.' Thus the existence of a 'cloud on title' is grounds for rescission of a contract to sell land before the deed is delivered and accepted.

■ These doctrines are applicable specifically to the context of an executory contract to sell land. The failure to deliver 'good' or 'marketable' title [5] is a breach of the sale contract and constitutes a defense available to the buyer against specific performance. Once the deed is delivered and the sale is completed, however, the relevant covenants are only those contained in the deed itself.[6] The requirements for 'good title' as covenanted in the deed are distinct from those contained in the land sale contract:

> The concept of marketable title which applies to contracts requires substantial but not perfect performance; thus a title is objectionable only if it poses significant risks, while a title which is good in fact may be deemed unmarketable if it presents a risk of litigation which the court feels a purchaser should not be forced to accept. No such notions apply to deed covenants for title. They are deemed violated only if the title is actually bad or defective, not merely risky or in doubt.

Roger A. Cunningham et al., *The Law of Property* § 11.13, at 862 (2d ed.1993).

This requirement of actual defectiveness of title is particularly evident with respect to the covenants statutorily implied in the warranty deed. Though James has never clearly articulated which of these covenants he claims were breached, we note that each requires that title actually be defective before the grantor is held liable.

■ With respect to the covenant of seisin, "[t]he fact that a title is not marketable does not establish that it is bad or that there has been a breach of the covenant of seisin." 7 George W. Thompson, *Thompson on Real Property* § 3180, at 248 (1962). "The covenant of seisen pertains to title only and is not breached by the existence of an encumbrance." *Monti v. Tangora,* 99 Ill.App.3d 575, 54 Ill.Dec. 732, 737, 425 N.E.2d 597, 602 (1981).

■ As regarding the covenant of freedom from encumbrances, "[a]n encumbrance that is invalid is not within the covenant against encumbrances, though it is upon record.... If the purchaser expends money in removing the apparent encumbrance, he cannot recover even nominal damages in an action upon such a covenant." 7 Thompson, *Thompson on Real Property* § 3187, at 317. In regard to the covenant against encumbrances, the court in *Boulware v. Mayfield,* 317 So.2d 470, 472 (Fla.App.1975), said, "[t]he existence of an invalid and unenforceable claim is not a breach even though it constitutes a cloud on title" (quoting 4 Tiffany Real Property § 1013 (3d ed.1975)).

■ The covenant of warranty [7] requires that the "apparent cloud on the title

---

the state need not furnish cash as part of the reconstitution. The goal is to restore the trust to its position just prior to the conveyance effected by the redesignation legislation. *Id.* at 684 (footnote omitted). The effect of this directive is to protect bona fide purchasers of trust land from title problems related to property conveyed from the Trust.

5. In the land sale context, the requirement of delivering 'good' title is normally understood to mean 'marketable' title. *See, e.g., Fouch v. Rollins,* 146 F.Supp. 87, 90 (D.Alaska 1956).

6. James offers no legal authority supporting his contention that an implied covenant of marketable title exists in a deed. The cases he cites relating to marketable title arise in the context of land sale contracts, and thus are not relevant to a claim for breach based on a deed that has been executed and delivered to the purchaser.

7. The covenant of quiet enjoyment, or quiet and peaceable possession, is contained in the covenant of warranty. AS 34.15.030. *See also* 7 Thompson, *Thompson on Real Property* § 3189 (1981 pocket part) ("A covenant of warranty is

... be shown to be valid before the grantor will be liable...." 7 Thompson, *Thompson on Real Property* § 3196, at 355.

> This covenant is merely a guarantee that there are no valid claims outstanding against the property conveyed. If an invalid or inferior claim is asserted, the covenantor has no liability.... A breach of this covenant occurs when, and only when, the grantee suffers an eviction under paramount title.

6A Richard R. Powell, *Powell on Real Property* § 900[2][d] (1993).

■ Finally, expressly included in the warranty deed at issue is the covenant to provide further assurances against title. "This is a promise by the grantor to execute any additional documents that may be needed in the future to perfect the title which the original deed purported to convey." Cunningham, *The Law of Property*, at 866. "An apparent outstanding title does not violate a covenant for further assurance unless the defect is one which can be supplied by the grantor himself." 5 A.L.R 1088. Since McCombs could not have executed a document perfecting James's title, this covenant is not relevant to the instant case.

■ We note that James's conveyance of Tract 29 to the State does not in any way suggest a breach of covenant by McCombs. There is no evidence that the State or the Alaska Mental Health Trust ever asserted a claim of title. Moreover, had there been such a claim and had James surrendered title because of it, still the State must actually have held superior title in order for there to have been a breach: "A covenantee may not yield to an opposing but inferior title and

then hold his warrantor to liability for damages." 2 Milton R. Friedman, *Contracts and Conveyances of Real Property* § 12.2(a)2 n. 19, at 1093 (5th ed.1991).

Since a mere 'cloud on title' would not amount to a breach of any of the covenants contained in his warranty deed, James must show the actual existence of a paramount title in the State at the time title was delivered to him in order to establish a breach.

B. *There was no outstanding paramount title to Tract 29 when McCombs delivered title to James.*

■ James's contention that the Alaska Mental Health Trust held paramount title is based on the holding of *State v. Weiss,* 706 P.2d 681 (Alaska 1985), where this court invalidated the statute redesignating Mental Health Trust lands as general grant lands.[8]

■ James incorrectly asserts that invalidation of the redesignation act would essentially strip title from a third party bona fide purchaser. In fact, a trustee's breach of fiduciary duty in selling trust land does not affect the title held by a bona fide purchaser. *Restatement (Second) of Trusts* § 284; George T. Bogert, *Trusts* § 165 (6th ed.1987).[9]

Indeed our decision in *Weiss* supports this general proposition that title to lands sold to third parties remains valid even after a trust has been restructured. The *Weiss* court indicated that lands purchased by third parties are not to be brought back into the trust. Instead, "[t]o the extent that former mental health lands have been sold since the date of the conveyance [to the general grant]," the State is instructed to reimburse the trust for

---

synonymous with a covenant of peaceful possession and enjoyment."). The covenant of quiet enjoyment "assures the grantee that his or her quiet possession or enjoyment will not be disrupted by the grantor or anyone else with paramount title." 6A Richard R. Powell, *Powell on Real Property* § 900[2][d] (1993).

**8.** McCombs persuasively argues that

> Dr. James rests his entire case on the spurious proposition that because this Court declared the Redesignation Act invalid, any transfer by the state of former Mental Health lands was void from its inception. Nowhere does the

Plaintiff support this conclusion with any legal authority, nor does he explain why, if the Redesignation Act was void, the state in its capacity as Trustee of the mental Health Land Trust could not have legitimately sold the agricultural rights in Tract 29 to Mrs. McCombs.

**9.** Both McCombs and James were bona fide purchasers for value. A bona fide purchaser is one who "acquired title without notice, actual or constructive, of another's rights and also must have paid value for the same." *State v. 18,018 Square Feet, More or Less,* 621 P.2d 887, 890 n. 5 (Alaska 1980) (quoting *Sieger v. Standard Oil Co.,* 155 Cal.App.2d 649, 318 P.2d 479, 484 (1957)).

the fair market value at the time of the sale of those lands. *Weiss*, 706 P.2d at 684.

All other claims made by James suggesting that McCombs's title, and therefore his own, was voided by the Mental Health Trust litigation are similarly without merit. We conclude that at the time the deed was conveyed, McCombs possessed paramount title to Tract 29. We further conclude that since there were no defects in James's title, no covenants contained in his warranty deed were breached, and therefore James was not entitled to rescissionary relief.

   C. *Since James received good title to Tract 29, his failure of consideration defense to McCombs's counterclaim is rejected as a matter of law.*

In response to McCombs's countersuit to enforce the promissory note executed as payment for the land, James asserts failure of consideration as a defense, based on his contention that title was impaired. Without reaching the issue of whether this defense is time-barred, we hold that it fails as a matter of law. The failure of consideration defense is predicated on James's original claim that he received defective title to the land. Since we have concluded that the superior court properly granted summary judgment against James on this claim, we must hold that James's defense is similarly without merit. Because McCombs conveyed good title, James's defense fails as a matter of law regardless of whether it is barred by the statute of limitations.

## IV. *CONCLUSION*

James's claim for rescission fails because no covenants, either express or implied, in his warranty deed to Tract 29 were breached. We similarly reject James's failure of consideration defense to McCombs's counterclaim for payment on his promissory note, based on the fact that good title was conveyed. For these reasons, we AFFIRM the superior court's award of summary judgment in favor of McCombs on both James's claim and McCombs' counterclaim.