John TITUS, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–8059.

Supreme Court of Alaska.

Aug. 14, 1998.

Arthur L. Robson, Robson Law Office, Fairbanks, for Petitioner.

Nancy R. Simel, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH and FABE, JJ.

## OPINION

FABE, Justice.

### I. INTRODUCTION

After a Fort Yukon jury convicted John Titus of first degree sexual assault, he moved for an evidentiary hearing to investigate potential jury misconduct. At the hearing, members of his jury testified that they had discussed matters not presented at trial, including the fact that Titus may have been drinking the night of the alleged rape. The superior court granted Titus a new trial because of this jury misconduct, but the court of appeals reversed. It ruled that Alaska Rule of Evidence 606(b) barred the superior court from accepting the jurors' testimony about their deliberations because pre-existing juror knowledge does not qualify for the rule's extraneous prejudicial information exception. We conclude that pre-existing juror knowledge about the facts of the alleged crime does constitute extraneous prejudicial information within the meaning of Rule

606(b) and therefore reverse. However, because it is unclear if the comments made in the jury room were based on actual knowledge about the facts and circumstances of the alleged crime, we remand to the superior court for further findings.

## II. *FACTS AND PROCEEDINGS*

After a Fairbanks grand jury indicted him for first degree sexual assault allegedly occurring in the village of Venetie, John Titus requested that his trial be held in Fort Yukon. He made this request pursuant to Alaska Rule of Criminal Procedure 18, which entitled him to be tried in the locality nearest to Venetie with adequate trial facilities. Over the State's objection, Superior Court Judge Mary E. Greene granted his request.

At the time of trial, Titus was well-known in Fort Yukon, a community of approximately 750 people. His visibility in the community stemmed from his position as village chief of Venetie, his membership in the Yukon Flats Regional Board of Education, and his role in the Native sobriety movement. Because of Titus's stature in the community and the resulting difficulty in finding jurors who were unfamiliar with him, the State moved for a change of venue to Fairbanks after the first day of voir dire and again at the completion of juror selection. Titus opposed the motion, and Judge Greene denied it.

Of the twelve jurors eventually selected for his trial, all but one either knew Titus or knew of him. Similarly, half of the jurors had heard of the case prior to trial. All of the jurors selected, however, denied having knowledge about the details of the alleged crime.

The trial lasted slightly longer than one day. As his defense, Titus claimed consent. Because the State presented little corroborating evidence, the trial was largely a credibility battle between Titus and P.F., the alleged victim. No evidence was presented at trial suggesting that Titus had been drinking on the night of the alleged rape. On March 9, 1994, the jury found Titus guilty of first degree sexual assault.

After the trial concluded, Titus approached several members of the jury to ask why they had convicted him and to proclaim his innocence. Based on what he and an investigator from the Alaska Public Defender Agency learned from discussions with jury members, Titus moved for a new trial, alleging jury misconduct.

Judge Greene granted an evidentiary hearing to determine whether the jury had acted improperly. Three of the jurors testified at this hearing, and four others later submitted affidavits describing the jury deliberations. The testimony of the seven jurors, although inconsistent in some respects, showed that various comments had been made about Titus's drinking habit. Most importantly, Vera James testified that several jurors had suggested that Titus had been drinking at the time of the alleged rape.

After considering the testimony, Judge Greene concluded in part that "[d]uring the jury's deliberations, there was general discussion of Titus'[s] drinking at the time of the alleged rape in Venetie and before the trial." Relying on the test established in *Swain v. State*, 817 P.2d 927, 930–33 (Alaska App.1991), she also found that there was a substantial likelihood that the vote of one or more jurors was influenced by this exposure to prejudicial matter outside the trial record. She therefore granted Titus's motion for a new trial.

The court of appeals reversed, ruling that Judge Greene was precluded from considering the jurors' testimony under Rule 606(b). *See State v. Titus*, 933 P.2d 1165, 1178 (Alaska App.1997). The court's holding was based on the conclusion that pre-existing juror knowledge does not qualify for the rule's extraneous prejudicial information exception. *See id.* at 1177. Titus appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

We review *de novo* the court of appeals' conclusion that pre-existing juror knowledge cannot be extraneous prejudicial information within the meaning of Rule 606(b). *See M.R.S v. State*, 897 P.2d 63, 66 (Alaska 1995). In interpreting Rule 606(b), we adopt the rule of law that "is most persuasive in light of precedent, reason and policy." *Id.* (internal

quotations and citations omitted). Because it is a factual determination, the superior court's conclusion that extraneous prejudicial information reached the jury is reviewed under the clearly erroneous standard. *See Cheely v. State*, 861 P.2d 1168, 1178 (Alaska App.1993) (stating that whether or not a juror engaged in alleged misconduct is a question of fact and reviewing judge's determination under clearly erroneous standard).

### B. *The Scope of Rule 606(b)'s "Extraneous Prejudicial Information" Exception*

Alaska Rule of Evidence 606(b) provides generally that, when the validity of a verdict or indictment is at issue, a juror cannot testify about what occurred during jury deliberations. *See* Alaska R. Evid. 606(b).[1] The rule, however, contains two exceptions. It permits a juror to testify about "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." *Id.* In this case, we must construe the first exception.

The court of appeals correctly observed that prior Alaska cases have not decided the question of whether a juror's pre-existing knowledge constitutes extraneous prejudicial information within the meaning of Rule 606(b). The past decisions of this court and the court of appeals establish only that information coming to the jury through the trial process cannot be considered extraneous. *See Tellier v. Ford Motor Co.*, 827 P.2d 1125, 1127 n. 1 (Alaska 1992) (stating that information contained in an exhibit, even if it should have been redacted, is not extraneous); *Turpin v. State*, 890 P.2d 1128, 1131 (Alaska App.1995) (stating that the jury's use of the

prosecutor's remarks in the opening statement for improper purposes does not satisfy the extraneous prejudicial information exception because the information reached the jury through the normal trial process). As the court of appeals acknowledged, the information discussed by the jury in this case was not presented to the jurors during the trial itself. Because our prior decisions do not resolve the issue posed by this appeal, we consider the legislative history of the federal counterpart to Rule 606(b), the policy considerations underlying the rule, and case law from other jurisdictions in deciding what qualifies as extraneous prejudicial information.

### 1. *Legislative history of Federal Rule 606(b)* [2]

Congress enacted Federal Rule 606(b) after significant debate. *See generally Tanner v. United States*, 483 U.S. 107, 122–24, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); Charles A. Wright & Victor J. Gold, 27 *Federal Practice and Procedure* § 6071 (1990). The House and the Senate favored different versions of the rule. The House's version excluded only jurors' testimony about their mental processes in reaching a verdict. *See* Preliminary Draft of Proposed Rules of Evidence (1969), 46 F.R.D. 161, 289–90; Susan Crump, *Jury Misconduct, Jury Interviews, and the Federal Rules of Evidence: Is the Broad Exclusionary Principle of Rule 606(b) Justified?*, 66 N.C. L.Rev. 509, 521 (1988). The Senate version, modeled on the approach taken by the federal courts, prevented jurors from testifying not only about their mental processes, but also about all events affecting their deliberation unless those events could be considered an extraneous influence. *See* S.Rep. No. 93–1277, at 13 (1974), *reprinted*

---

1. Alaska Rule of Evidence 606(b) states:

 Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information

 was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

2. The commentary to Alaska Rule 606(b) recognizes that our rule is based on the federal rule; as a result, analysis of the federal rule's legislative history is appropriate in this case.

*in* 1974 U.S.C.C.A.N. 7051, 7060; *Tanner,* 483 U.S. at 124, 107 S.Ct. 2739; *Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (holding that a juror "may testify to any facts bearing upon the question of the existence of any extraneous influence"). Congress enacted the Senate version. *See* H.R. Conf. Rep. No. 93–1597, at 8 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7102. Although members of Congress used the "extraneous influence" language of cases like *Mattox* during debate on the rule, the rule itself creates two exceptions: extraneous prejudicial information and outside influence. *See* Fed.R.Evid. 606(b).

Statements made by members of Congress during debate of the two versions reveal their views on the meaning of the exceptions eventually enacted. Citing previous case law, one legislator stated that the Senate version permitted juror testimony about whether a bailiff expressed opinions about a defendant's guilt to jurors, whether jurors conversed with a police witness against the defendant, and whether the jury was exposed to a newspaper article unfavorable to the defendant.[3] *See* 120 Cong. Rec. 2374–2375 (1974). That representative believed that the extraneous influence exception did *not* permit jurors to testify regarding allegations that the jury reached a compromise verdict or a quotient verdict, that the jury refused to follow the judge's instructions, or that a juror refused to participate. *See id.;* S.Rep. No. 93–1277, at 13. These latter events/issues were viewed as internal, rather than external, influences on the verdict. *See* S.Rep. No. 93–1277, at 13. The Advisory Committee Note to Rule 606(b) recognizes the internal/external distinction drawn by members of Congress and confirms that testimony regarding internal influences is not permitted under the rule.

It is unclear from the legislative history whether Congress would have considered pre-existing juror knowledge to be an internal or external influence on the jury. Extra-record information revealed by a member of the jury does not fit neatly into the external category because such information does not come from a third person or from an external source such as a newspaper. But such information also does not clearly qualify as an internal influence. A juror who testifies about the use of such information is not revealing the manner in which the jury reached the verdict; for instance, he or she is not testifying that the jury had reached a quotient verdict or flipped a coin to decide. Neither does such testimony deal with issues internal to the trial, such as whether a juror misinterpreted the instructions or refused to participate in deliberations. We therefore conclude that the legislative history is ambiguous with respect to the issue posed in this case.

### 2. *Policy considerations*

The commentary to Rule 606(b) recognizes that the rule serves competing policy interests. The rule imposes a general ban on using juror testimony to impeach verdicts in order to protect jurors from harassment, to encourage free jury deliberation, and to promote the finality of verdicts. *See* Alaska R. Evid. 606(b), commentary. At the same time, Rule 606(b) protects the interest in avoiding injustice by creating exceptions to the general ban in situations where irregularities have marred the integrity of the deliberation process. *See id; see also Crump, supra,* at 512 (reviewing case law explaining the policy interests behind the rule). The interest in avoiding injustice protected by the rule can be broken down into two related concerns: ensuring that verdicts are accurate and that they are reached through a fair process. *See* Wright & Gold, *supra,* § 6071, at 402.

Concerns about the accuracy and fairness of verdicts are implicated when the jury considers evidence that has not been presented in open court and thus has not passed the test of adversarial challenge. *See id.* Additionally, the interest in ensuring fairness and

---

3. The final version enacted by Congress may have approved two different exceptions in order to differentiate between the types of extraneous influences discussed: the first two examples listed above can be considered outside influences and the third, because it does not involve a juror talking to another person, fits best into the extraneous prejudicial *information* exception. *See* H.R.Rep. No. 93–650, at 9–10 (1973), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7083.

accuracy is particularly strong in criminal cases, where an individual's liberty is at stake. *See Crump, supra,* at 518. Because this is a criminal case, and because the jurors appear to have considered evidence outside the record during their deliberations, policy considerations suggest that this is the type of case that should qualify for one of the exceptions included in Rule 606(b).

### 3. *Case law from other jurisdictions*

Case law interpreting Rule 606(b) shows that courts draw a distinction between pre-existing juror knowledge of a general nature and pre-existing knowledge about the defendant or the case itself. *See* Wright & Gold, *supra,* § 6075, at 451. Courts agree that a juror who discusses his or her general knowledge during deliberations, such as a familiarity with x-ray technology, has not introduced extraneous prejudicial information into the jury room. *See, e.g., Hard v. Burlington N. R.R. Co.,* 870 F.2d 1454, 1462 (9th Cir.1989). Cases refusing to consider such knowledge as falling within the exception stand for the sound proposition that jurors "can make intelligent decisions only by drawing upon their accumulated background knowledge and experience." Wright & Gold, *supra,* § 6075, at 450.

Most courts, however, including federal courts, hold that pre-existing juror knowledge about the defendant or the case itself does constitute extraneous prejudicial information.[4] *See, e.g., Hard,* 870 F.2d at 1462 (stating that "if a juror's past experiences were directly related to the litigation ... the discussion of those experiences would constitute extraneous information that could be used to impeach a jury's verdict"); *see also* Wright & Gold, *supra,* § 6075, at 451–52 n. 32 (collecting cases). *But see Marr v. Shores,* 495 A.2d 1202, 1205 (Me.1985) (holding, in a case where a juror allegedly discussed personal knowledge of facts directly related to the litigation, that "[t]he mere

communication of personal knowledge by a juror to his fellow jurors during deliberations ... [is] not extraneous"). In justifying its interpretation of the rule, one federal court implied that jurors who provide information about the case or the defendant are acting as witnesses. *See United States v. Perkins,* 748 F.2d 1519, 1533 (11th Cir.1984). Because their testimony occurs in the jury room, however, the defendant is robbed of the opportunity to subject it to adversarial challenge. As a result, the court concluded that permitting juror statements about such knowledge compromises a defendant's rights to confrontation, cross-examination, and counsel. *See id.*

We agree with the majority view that pre-existing knowledge about the case or the defendant can constitute extraneous prejudicial information under Rule 606(b); to interpret the rule otherwise would jeopardize a defendant's constitutional right to confrontation. *See Kenai Peninsula Borough v. Cook Inlet Region, Inc.,* 807 P.2d 487, 498 (Alaska 1991) (stating that "statutes are to be construed to avoid a substantial risk of unconstitutionality where adopting such a construction is reasonable"). The court of appeals erred in concluding that such knowledge could not qualify for the exception because it failed to note the distinction in the case law between background knowledge unconnected to the litigation and knowledge about the facts of the case at hand. *See State v. Titus,* 933 P.2d 1165, 1176 (Alaska App.1997).

But the right to adversarial challenge is not the only constitutional interest at stake in interpretation of Rule 606(b): the federal constitution also guarantees defendants the right to be tried in the locality of the alleged crime. *See* U.S. Const., art. III, § 2 & amend. VI. Alaska guarantees defendants this right through Criminal Rule 18(e). Both the state and the federal constitutions also guarantee defendants the right to a jury drawn from a fair cross-section of the com-

---

4. In general, federal law interpreting Rule 606(b) is more helpful than state law interpreting state versions of the rule because many states enacted modified versions of Rule 606(b), specifically expanding or contracting the scope of permissible juror testimony. *See* Wright & Gold, *supra,* § 6071, at 379–85. The states, other than Alas-

ka, that either enacted versions identical to the federal rule or made only semantic changes are: Arkansas, Colorado, Delaware, Iowa, Maine, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, Oklahoma, South Dakota, Utah, Wisconsin, and Wyoming. *See id.*

munity. *See Alvarado v. State*, 486 P.2d 891, 898–99 (Alaska 1971) (interpreting article I, section 11 of the Alaska Constitution); *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). As the court of appeals stated:

> These guarantees are premised on the idea that the jury functions as a representative body, that it should express the knowledge and sentiments of the community affected by its decisions, and that jurors should therefore be chosen from among the people who live in that locality.... [T]he drafters of the two constitutions believed that, generally speaking, there is a better chance that justice will be done if jurors are selected from people familiar with the community's culture and general conditions of life.

*Titus*, 933 P.2d at 1177. Because jurors from the defendant's community are more likely than strangers to have pre-existing knowledge about his or her reputation and the charge, the constitutional interest in adversarial challenge conflicts with the interest in conducting trials in the defendant's community. Balancing these constitutional interests poses a special challenge in Alaska, where many individuals live in small villages and towns.

After considering these competing constitutional concerns, we conclude that they can best be balanced by a rule that includes only knowledge of specific facts surrounding the alleged crime and the defendant's connection to it within the scope of the extraneous prejudicial information exception to Rule 606(b). This is a sound interpretation of the exception for two reasons. First, as the State argues, in many of the villages and small towns of Alaska, it may well be impossible to find twelve jurors who are totally ignorant of the defendant or the victim and the alleged criminal conduct. *See United States ex rel. Owen v. McMann*, 435 F.2d 813, 817–18 (2d Cir.1970) (stating that rights of confrontation and due process should not be deemed violated simply because jurors were "influenced to some degree by community knowledge that a defendant was 'wicked' or the reverse, even though this was not in evidence"). As a result, a rule that interpreted the extraneous prejudicial information exception to include such general knowledge would preclude defendants who live in villages and small towns from being tried by members of their community.

Second, juror knowledge about the specific facts of the alleged crime itself is more likely than general knowledge to lead to inaccurate verdicts because it is unlikely to be tested by other jurors during deliberations. *See* Wright & Gold, *supra*, § 6075, at 452. Because not all jurors will have access to specific facts about the crime and the defendant's connection thereto, those who purport to have such information may be believed without debate, even if their information is inaccurate.

Permitting juries to convict defendants when they have considered such extra-record information would undermine interests in both fairness and accuracy by robbing the defendant of the chance to contest such evidence. We therefore conclude that a distinction must be made between a juror's general background knowledge about the defendant or the charge and a juror's knowledge about specific facts relating to the alleged crime and the defendant's involvement in it.[5] The generalized knowledge that is available to a significant portion of the community should not qualify for the exception both because it would make it impossible to hold trials in small communities and because such information is more likely to be tested by the jury itself. Because neither consideration applies to information about the defendant or the alleged crime that may be known only to a select few, such information should qualify for the exception.

4. *The nature of the extra-record information discussed by the jury in this case*

Citing *Hard*, the State appears to concede that "[i]f the juror's past experiences are directly related to the litigation, discussion of

---

5. In drawing this distinction, we determine only the kind of pre-existing juror knowledge that qualifies as extraneous prejudicial information within the meaning of Rule 606(b). We express no opinion on the type of juror knowledge that would warrant a change of venue.

those experiences would constitute extraneous information that could be used to impeach the verdict." The State argues, however, that the comments made by Titus's jurors did not concern the facts of the case itself. This interpretation of the testimony ignores the trial court's finding that some jurors may have had knowledge, mistaken or not, that Titus was drinking at the time of the alleged rape.

Judge Greene stated in her decision regarding Titus's motion for a new trial that "[d]uring the jury's deliberations, *there was general discussion of Titus'[s] drinking at the time of the alleged rape in Venetie* and before the trial." (Emphasis added.) The State suggests that this characterization of the evidence is inaccurate.

The transcript shows that only two jurors testified that there were comments made concerning the night of the alleged rape itself. First, Evelyn James testified that one juror had wondered if Titus might have been drinking on the night in question because it fell during Venetie's spring carnival. This juror apparently had no specific information but was simply hypothesizing based on his or her knowledge that "people drink" during the carnival. Second, Vera James testified that several jurors stated that Titus had, in fact, been drinking on the night in question.

■ The State is correct that Evelyn James's testimony does not support the conclusion that extraneous prejudicial information was presented to the jury. The comment Evelyn James remembered appears to have been mere speculation, based on a juror fitting together pieces of his or her general knowledge about activities in Venetie during carnival. Because we conclude that general community knowledge is not extraneous within the meaning of Rule 606(b), we also conclude that speculation based on such knowledge is not extraneous. *See Crump, supra,* at 540 (arguing that only authoritative comments, not speculation, should qualify as extraneous information).

■ Vera James's testimony, however, suggests that several jurors did have information about the facts of the alleged crime itself. Instead of mere speculation, she remembered jurors claiming to *know* that Titus was drinking at the time in question. Contrary to the State's argument, therefore, at least one of the jurors testified that comments had been made that pertained specifically to the facts of the alleged rape.

Although Vera James's testimony could support a finding that the jury had considered extraneous prejudicial information, her recollection of the jurors' comments was contradicted by Sarah Knudson, who stated that the jury had discussed Titus's drinking in general terms only. Further, Evelyn James's testimony suggested that the comment Vera James remembered was based merely on speculation. Because general knowledge about the defendant and speculation do not constitute extraneous prejudicial information, the superior court's decision to grant a new trial would be appropriate only if Vera James's recollection of the deliberation was more credible.

In making its decision below, the superior court did not have the benefit of the rule we announce today, distinguishing between general knowledge of the defendant's reputation and the charge on the one hand and knowledge about the specific facts of the alleged crime itself on the other. Given an absence of specific findings on this issue, it is not possible for us to evaluate the court's conclusions about what occurred during deliberations. Thus, we remand to the superior court for an analysis that addresses the inconsistency in the testimony and applies the legal standards established in this opinion.[6]

C. *Titus Did Not Waive His Right to Impeach the Jury Verdict by Failing to Question Jurors Properly during Voir Dire.*

The State argues alternatively that we can affirm the decision of the court of appeals

---

**6.** On remand, the superior court may consider juror testimony regarding the jury's knowledge of Titus's reputation when drinking for the limited purpose of determining whether a comment that he was drinking at the time of the alleged crime would have posed a substantial likelihood of influencing the vote of one or more jurors. *See Swain v. State,* 817 P.2d 927, 931 (Alaska App.1991) (citation omitted). The court may also hold a supplemental hearing on the nature of comments made by jurors in the jury room if it finds it necessary.

even if we conclude that extraneous prejudicial information reached the jury because Titus waived any objection to the jurors having personal knowledge about him or his reputation in the community.[7]

 Titus does not contest the State's view that voir dire revealed that most of the jurors knew him and probably knew of his use of alcohol. Despite this fact, Titus did not challenge jurors who were familiar with him and insisted that his trial be held in Fort Yukon rather than in Fairbanks when the State moved for a change of venue. As a result, the State's argument that Titus waived his right to impeach the jury verdict based on bias stemming from the jurors' general familiarity with him has merit. *See Hancock v. Northcutt*, 808 P.2d 251, 259 (Alaska 1991); *see also United States v. Costa*, 890 F.2d 480, 482 (1st Cir.1989).

But Titus does not only allege that the jurors were biased; he also alleges that they considered prejudicial information about his conduct at the time of the alleged rape that was not presented at trial. None of the jurors revealed such knowledge during voir dire. Instead, all of the jurors eventually chosen denied having any knowledge of the details of the alleged rape.[8] In reviewing the testimony during voir dire, Judge Greene specifically found that "[a]lmost all of these people who have heard about the case have heard that there was a charge, and virtually nothing else." Furthermore, because alcohol was not an issue in the case, there would have been no reason for Titus to question the jurors about their knowledge of his drinking habits. We therefore conclude that Titus did not waive his right to impeach the jury verdict based on the jury's consideration of extra-record evidence.

## IV. *CONCLUSION*

Because we conclude that pre-existing juror knowledge about the facts of the alleged crime or its surrounding circumstances constitutes extraneous prejudicial information under Rule 606(b), we REVERSE the decision of the court of appeals. In order to resolve the discrepancies in the testimony presented about the kind of information brought before the jury, we also REMAND to the superior court for further findings.

BRYNER, J., not participating.

---

7. The State did not raise this argument in the trial court. Neither was this argument considered by the court of appeals. However, we can affirm the decision of a lower court on any grounds. *See James v. McCombs*, 936 P.2d 520, 523 n. 2 (Alaska 1997).

8. If any of the jurors had deliberately lied about their knowledge of the case, such conduct could

in and of itself justify a new trial under the test laid out in *Fickes v. Petrolane–Alaska Gas Service, Inc.*, 628 P.2d 908, 910–11 (Alaska 1981). Juror misconduct in the form of non-disclosure of relevant information during voir dire provides a separate basis from Rule 606(b) for requesting a new trial. *See United States v. Perkins*, 748 F.2d 1519, 1531–33 (11th Cir.1984).