**Albert M. VAN HUFF, Appellant,**

v.

**SOHIO ALASKA PETROLEUM COMPANY, Sohio Construction Company, and the Standard Oil Company, Appellees.**

No. S–4373.

Supreme Court of Alaska.

June 26, 1992.

Robert C. Erwin, Erwin & Smith, Anchorage, for appellant.

Terrance A. Turner and Scott J. Nordstrand, Owens & Turner, P.C., Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

## I. INTRODUCTION

Albert Van Huff filed a complaint against Sohio Alaska Petroleum Company ("SAPC"), Sohio Construction Company ("SCC"), and the Standard Oil Company

("SOCO"), alleging that he was terminated in violation of his employment contract and as a result of the malice and ill will of his supervisors. After a jury trial conducted by Judge Karen Hunt, the jury returned a verdict in favor of the defendants.

Van Huff appeals, alleging five errors. He claims that the superior court employed an improper method of jury selection, improperly admitted certain alleged hearsay statements, issued an improper jury instruction, erred in refusing to grant a new trial for alleged juror misconduct, and abused its discretion in awarding attorney's fees. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In February 1985, Van Huff sued SAPC, SCC, and SOCO (collectively "Sohio") for wrongful discharge, seeking compensatory and punitive damages. In its defense, Sohio argued that Van Huff was a marginal employee who was terminated during a reduction in force which resulted from a good faith business decision.

Prior to trial, Sohio filed a motion requesting a ruling that the SCC supervisors responsible for Van Huff's termination could testify concerning the opinions expressed to them by Van Huff's supervisors about Van Huff's work performance. Sohio argued that these opinions were admissible evidence of the state of mind of the supervisors who rated Van Huff, and were therefore admissible under Alaska Rule of Evidence 803, paragraphs (3) and (23), the "state of mind exception" and "general exception" to the hearsay rule. Despite Van Huff's objections, the superior court granted this request in its entirety. During trial, Sohio was permitted on several occasions to question SCC supervisors about the opinions which Van Huff's supervisors had expressed to them.

Sohio also filed a pretrial motion requesting the trial court to employ the "struck jury" method of selecting jurors. Despite Van Huff's objections, this motion was granted and the court utilized the "struck jury" method.

At the conclusion of the trial, the trial court issued many instructions to the jury. Van Huff objected to the form of instruction number 31, which provided:

In response to Albert Van Huff's second claim that Sohio Construction Company breached his [sic] employment contract with him by wrongfully terminating him before his retirement, Sohio Construction Company (1) denies that the termination was wrongful and (2) claims that it had a legitimate business purpose for the termination. The legitimate business purpose it claims is an anticipated significant reduction in amount of work available to the Sohio Construction Company.

An employer may terminate an employee if it has a fair or honest reason based upon a business purpose which the employer acts on in good faith.

An employer's termination decisions are based upon a legitimate business purpose if you conclude that management acted upon information which reasonable minds might accept as adequate to support its conclusions. You are not permitted to substitute your judgment for that of Sohio Construction Company even if you would have acted differently had it been up to you.

In order for Sohio Construction Company to win on its claims, you must decide it is more likely true than not true that its reason for terminating Albert Van Huff is a legitimate business purpose.

Otherwise, you must decide for Albert Van Huff on his second claim that Sohio Construction Company wrongfully terminated his employment before he reached retirement at age 62.

Van Huff argued that this instruction failed to explain that the business purpose claimed by SCC as a defense must be "reasonable," and that SCC's termination of Van Huff must have been honestly done for that purpose. Judge Hunt overruled this objection because "[b]oth of those are already in the instruction."

The jury returned a verdict of no liability. After each juror had been polled, juror

Vernon Henrickson rose and stated that improprieties had occurred during jury deliberations. The superior court immediately sequestered the jurors, ordered them not to talk to one another, and conducted an extensive *voir dire* of each juror concerning the matters raised by Henrickson.

Henrickson, the first juror examined, testified that juror Randall Butts had expressed frustration on Saturday morning over the possibility of continuing deliberations past Saturday afternoon because Butts was starting a new job and needed to be at work on Monday. Henrickson suggested that Butts changed his vote during deliberations from a position in favor of Van Huff to one supporting Sohio in order to expedite a verdict. Henrickson also testified that he overheard Butts say that his wife was "going to work for Sohio or ARCO within a week."

Butts, the next juror examined, testified that he had been frustrated by the difficulty the jury was having in reaching a verdict, but that he had not felt any pressure to reach a verdict by a certain time. He originally agreed with Van Huff that Sohio had breached the covenant of good faith and fair dealing, but was later convinced of Sohio's position and therefore changed his vote. Butts stated that his wife was working at ARCO and "might be transferring next week to Sohio," but did not discuss this with other jurors until after a verdict had been reached.

Judge Hunt and counsel for both parties then questioned the other jurors individually. Some jurors remembered Butts' statement that he did not want deliberations to continue past the weekend, but these jurors did not believe that Butts was influenced by this desire because he continued to actively discuss the issues. Some jurors also remembered that Butts had said that his wife was being transferred to Sohio during the week after the conclusion of the trial.

These jurors stated that they were not influenced by that fact and did not believe that it influenced Butts. Several jurors remembered that Henrickson had threatened the jury with a mistrial if his position was not adopted by the other jurors.

Van Huff filed a motion for a new trial, alleging juror misconduct. Judge Hunt denied this motion, and subsequently entered a final judgment in November 1990. Sohio then requested an award of costs and attorney's fees. Sohio claimed that it had incurred $351,854.55 in actual legal fees, and requested an award of sixty percent of that amount. Van Huff opposed the motion for attorney's fees, claiming that Sohio's counsel had charged for unnecessary work, and that Sohio should not be reimbursed for more than twenty percent of its legal fees. Judge Hunt awarded Sohio thirty percent of its claimed actual legal fees, $117,251.52. This appeal followed.

## III. DISCUSSION

### A. *Did the superior court err by using the "struck jury" method of jury selection?*

■ Van Huff first argues that the superior court abused its discretion by using the "struck jury" method of jury selection. He argues that the struck jury method is inconsistent with Alaska Rule of Civil Procedure 47(d) because that rule provides for the exercise of peremptory challenges as to jurors in the box, and under the struck jury method peremptory challenges are exercised before jurors are seated in the box.[1] He also claims that the struck jury approach limited his control over the selection of jurors, and that he was improperly forced to exercise all of his peremptory challenges.[2]

Although not a constitutional right, "[t]he persistence of peremptories and their extensive use demonstrate the long and

---

1. AS 09.20.090 provides in part: "The prospective jurors shall be examined, challenged, and sworn as provided by rules of the supreme court."

2. Alaska Rule of Civil Procedure 47(e) provides that "[t]he court has discretion to set procedures for the exercise of challenges and for the replacement of challenged jurors...." Accordingly, this court employs an abuse of discretion standard of review in examining the method of jury selection utilized by the trial court.

widely held belief that peremptory challenge is a necessary part of trial by jury." *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), *overruled on other grounds, Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The method for exercising peremptory challenges depends upon the method of jury selection. The Second Circuit discussed the traditional "jury box" and "struck jury" selection methods in *United States v. Blouin*, 666 F.2d 796 (2d Cir. 1981):

> Under what might be called the "jury box" system, twelve members of the array are selected by lot to enter the jury box; counsel for each side then exercise challenges for cause and their allotted number of peremptory challenges, in some prescribed pattern of alternation, against those seated in the jury box and against those drawn to replace any of the first twelve who have been challenged. When both sides have either used or waived their allotted challenges, the twelve members of the venire then in the jury box become the petit jury. Under the "struck jury" system, an initial panel is drawn by lot from those members of the array who have not been challenged and excused for cause; the size of this initial panel equals the total of the number of petit jurors who will hear the case ..., plus the combined number of peremptories allowed to both sides.... Counsel for each side then exercise their peremptory challenges, usually on an alternating basis, against the initial panel until they exhaust their allotted number and are left with a petit jury of twelve.

*Id.* at 796–97. The struck jury method "has its roots in ancient common law heritage," and is now available in many states for both criminal and civil cases. *Swain v. Alabama*, 380 U.S. at 217–18, 85 S.Ct. at 834–35.

We reject Van Huff's argument that the struck jury method is inconsistent with Rule 47(d). That rule provides that "[a] party who waives peremptory challenge as to the jurors in the box does not thereby lose the challenge but may exercise it as to new jurors who may be called." While this rule seems to be directed to the jury box method of choosing jurors, for it refers to the replacement of a challenged juror in the box by another potential juror, the rule does not require usage of the jury box method.[3] Since Rule 47(e) gives the trial court discretion to set procedures for the exercise of peremptory challenges, that rule must not be read to prohibit usage of the struck jury method.

We also reject Van Huff's argument that the struck jury method limited his control over the selection of jurors. Although the jury box method allows more control over the rejection of specific jurors in the petit jury, the struck jury method better allows a party to shape an entire jury. "By permitting full comparative choice among a panel of twenty-eight prospective jurors, the 'struck jury' system lets the parties make the most effective use of their challenges, in the sense that through their choices they are able to determine from the initial panel not only who will not serve but also who will serve as the petit jury." *Blouin*, 666 F.2d at 798. *See also United States v. Sams*, 470 F.2d 751, 754 (5th Cir.1972) ("It is difficult to conceive of a fairer method of giving the defendant an opportunity to make a full choice of the range of the venire of 32 persons...."); *Swain*, 380 U.S. at 217–18, 85 S.Ct. at 834–35 ("Since striking a jury allowed both sides a greater number of challenges and an opportunity to become familiar with the entire venire list, it was deemed an effective means of obtaining more impartial and better qualified jurors."). Because the struck jury method is, overall, at least as effective as the jury box method in terms of selecting the jury as a whole, the superior court did not abuse its discretion in using the struck jury method.

---

**3.** The fact that Rule 47(d) refers to a "box" does not make that rule inconsistent with the struck jury method. As Judge Hunt noted during jury selection, it would have been possible to seat the twenty-two jurors who had been passed for cause in the jury box, although the jury box would have been quite crowded.

Van Huff's final argument, that he was improperly forced to exercise all of his peremptory challenges, lacks merit. The struck jury method does not require a party to exercise all of its peremptory challenges. If one party does not exercise all of its challenges, resulting in more jurors than are needed, the judge may choose a jury from the potential jurors not challenged. *See United States v. Ricks,* 802 F.2d 731 (4th Cir.1986).

### B. *Did the superior court err in admitting out-of-court statements made by third parties to Van Huff's supervisors?*

■ Van Huff claims that the superior court erroneously overruled his objections to the admission of the testimony of SCC supervisors concerning the opinions of other SCC supervisors. This testimony was the subject of the pretrial order allowing the introduction of the "opinions of SCC's supervisors and contract and contractor personnel concerning Van Huff's job performance and relative job performance, which were relied upon by SCC supervisors in rating and ranking him." The bases for this pretrial ruling were Alaska Rule of Evidence 803, paragraphs (3) and (23), the "state of mind exception" and the "general exception" to the hearsay rule. Van Huff does not challenge the pretrial ruling, but instead argues that Sohio failed to show the circumstances under which the statements were made, and thus failed to establish a proper foundation for the admissibility of hearsay testimony pursuant to Rule 803(3).

Sohio argues that Van Huff's assertions are irrelevant because the third-party statements were not hearsay, since those statements were not offered to prove the truth of the matter asserted. Citing *International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.,* 189 F.2d 177 (9th Cir.1951), *aff'd,* 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952), Sohio argues that the opinions were admissible to show that the supervisors in charge of rating Van Huff acted reasonably and in good faith. If Van Huff wanted to limit the impact of those statements, Sohio ar-

gues, he should have requested a limiting instruction pursuant to Civil Rule 51(a). Sohio also claims that the disputed evidence was merely cumulative of other testimony introduced at trial, and therefore could not have adversely affected the jury's decision. *See In re D.J.A.,* 793 P.2d 1033, 1035–36 n. 2 (Alaska 1990) ("In determining whether an erroneous evidentiary ruling was harmless, the court shall put itself in the position of the jury to determine whether, as reasonable persons, any error committed probably affected their verdict.").

We find Sohio's arguments persuasive. The contested statements were not hearsay because they were introduced as proof of the state of mind of the supervisors that selected Van Huff for termination, and not as proof of the truth of the matter asserted in those statements. To the extent that the pretrial ruling implied that Sohio was required to establish a foundation for the admission of the statements under Rule 803(3), that ruling was erroneous. Because Van Huff did not request a limiting instruction, he cannot now assign as error the court's failure to instruct that the statements were to be considered only as evidence of the reasonableness of Van Huff's ratings, and not as evidence of Van Huff's poor performance.

### C. *Did the superior court err in giving jury instruction number 31?*

■ Van Huff claims that the superior court improperly instructed the jury as to Sohio's economic necessity defense because jury instruction number 31 failed to define "legitimate business purpose." Regardless of whether he properly objected to this error, Van Huff posits, the error requires a new trial. Under Alaska Rule of Civil Procedure 51(a), "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection." *See Girves v. Kenai Peninsula Borough,* 536 P.2d 1221, 1223 (Alaska 1975) ("Civil Rule 51(a) is intended to en-

sure that a trial judge is clearly made aware of the precise nature of the alleged error.").

The record indicates that Van Huff did not object during trial that instruction number 31 did not define "legitimate business purpose." Instead, Van Huff objected to that instruction because it failed to explain that the business purpose claimed by SCC as a defense must be "reasonable," and that SCC's termination of Van Huff must have been honestly done for that purpose. Because Van Huff now raises an objection which is entirely different from those he voiced at trial, we do not consider his objection.[4]

### D. Did the superior court err by denying Van Huff's motion for a new trial based upon alleged juror misconduct?

Van Huff argues that the superior court abused its discretion by denying Van Huff's motion for a new trial based upon alleged juror misconduct. He apparently believes that Butts' statements that he did not want the jury deliberations to continue past Saturday, and that "his wife was going to work the following week for Sohio or ARCO," indicated Butts' bias and also prejudiced the other jurors.

The standard of review applicable to a superior court's denial of a motion for a new trial based upon alleged juror misconduct is the abuse of discretion standard. *West v. State*, 409 P.2d 847, 852 (Alaska 1966). This court "will not disturb a trial court's decision on [a motion for a new trial] except in exceptional circumstances to prevent a miscarriage of justice." *Buoy v. Era Helicopters, Inc.*, 771 P.2d 439, 442 (Alaska 1989).

In *West v. State*, we explained under what circumstances juror misconduct should result in a new trial.[5] Chief Justice Nesbett wrote:

It is the overwhelming weight of authority that a juror generally cannot impeach the jury's verdict by his testimony or affidavit. Public policy supporting this rule is well expressed in *McDonald v. Pless* [238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915)] where the United States Supreme Court refused to permit jurors to testify that they had arrived at their verdict arbitrarily and unjustly by using the quotient formula.... The court observed that any detriment to a party resulting from the rule is outweighed by the benefit realized by preventing the tampering with or harassment of juries.

Exceptions to the general rule have been made and it has been held that the type of misconduct which may impeach a verdict is fraud, bribery, forcible coercion or any other obstruction of justice. Whether the verdict should be set aside and a new trial ordered rests in the sound discretion of the trial judge, but generally the verdict should stand unless the evidence clearly establishes a serious violation of the juror's duty and deprives a party of a fair trial.

---

4. Van Huff argues that this court held in *Reader v. Ghemm Co.*, 490 P.2d 1200 (Alaska 1971), that a trial court has a duty to provide the jury with a complete statement of those factors to be considered by the jury when considering the principal defense at trial, despite the lack of a specific objection under Rule 51(a). Actually, we held that Reader's objection that the instruction "does not correctly state the law" adequately preserved his right to urge error in the instruction, despite the fact that the replacement instruction he had proposed during trial was no better than the instruction to which he objected. *Id.* at 1202 n. 1.

5. Van Huff urges this court to apply the test articulated in the recent Alaska Court of Appeals case, *Swain v. State*, 817 P.2d 927 (Alaska App.1991). That case dealt with the question of whether a juror's personal knowledge of inadmissible extraneous evidence warranted a new trial. Writing for the court, Chief Judge Bryner concluded that for purposes of determining the influence on a juror of her exposure to potentially prejudicial extraneous matter, a reviewing court must apply an objective test and is precluded from considering evidence of the subjective impact of the extraneous matter on the juror. *Id.* at 931–33.

Because Van Huff does not allege that the jury in the present case was tainted by prejudicial extraneous matter, but instead that a juror was biased and made statements likely to affect the other jurors, the *Swain* test should not be applied.

*West v. State*, 409 P.2d at 852 (footnotes omitted). In *Fickes v. Petrolane–Alaska Gas Serv., Inc.*, 628 P.2d 908 (Alaska 1981), we identified three factors to be considered in determining whether a party was deprived of a fair trial:

> First, if the party asserting prejudice had known the true facts, is it probable that it would have challenged the juror? Second, did the improper comment merely go toward a collateral matter, e.g., the general credibility of a witness, or did it go to the essence of a claim or defense? Third, viewed objectively, was the probable effect of the comment prejudicial?

*Id.* at 911 (citations and footnotes omitted).

■ Butts' alleged bias and the alleged impact of his statements upon the other jurors do not warrant impeaching the verdict, because Butts' actions do not constitute severe juror misconduct and Van Huff was not deprived of a fair trial. There is no evidence in the record to support an allegation of fraud, bribery, forcible coercion or obstruction of justice, the types of misconduct with which *West* was concerned. As such, the threshold test of *West* was not met by Van Huff. In addition, our consideration of the *Fickes* factors strongly suggests that the juror misconduct alleged by Van Huff did not deprive him of a fair trial. We therefore find that the superior court did not abuse its discretion in denying Van Huff's motion for a new trial.

**6.** Van Huff stated that he was unemployed for almost two years following his discharge, his condominium was foreclosed, and he now earns $36,000 per year. He alleges that it will take him ten years to repay the attorney's fee award if he pays $12,000 plus interest per year.

**7.** Van Huff urges this court to apply the reasoning in *Crisp v. Kenai Peninsula School District*, 587 P.2d 1168, 1169 (Alaska 1978), *partially overruled by Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478 (Alaska 1984), to his case. In *Crisp*, we held that attorney's fees could not be assessed against a public school teacher whose dismissal from his job was upheld by the trial court after a hearing to determine if dismissal was justified. An important reason for our willingness to relax Rule 82's application was that Crisp had exercised his statutorily

## E. Did the superior court err in awarding attorney's fees?

Van Huff's final claim of error involves a two-pronged attack upon the superior court's award of attorney's fees to Sohio. The court awarded Sohio $117,251.50 in attorney's fees pursuant to Alaska Rule of Civil Procedure 82. Van Huff claims that this award was excessive, and that Rule 82 violates the due process clauses of the state and federal constitutions.

■ Van Huff's constitutional argument is that if Rule 82 is used to award attorney's fees against good-faith plaintiffs, the risk of incurring a large attorney's fee award will deter many plaintiffs from bringing suit, effectively depriving these litigants of access to the courts. Using his case as an example, he claims that it is unfair to expect an unemployed laborer to pay the attorney's fees of a large corporation after litigation of a non-frivolous wrongful termination claim.[6]

We reject Van Huff's constitutional argument for the same reasons we rejected that argument in *Stepanov v. Gavrilovich*, 594 P.2d 30, 37 (Alaska 1979). The argument "completely ignores the financial burden that such plaintiffs impose upon those who are forced to defend against such actions in equal good-faith." *Id.* We understand that attorney's fees can be very burdensome, but we do not believe that Rule 82, as applied in this case, violates the state or federal constitutional guarantees of due process of the law.[7]

guaranteed right to contest his dismissal in the courts. We also explicitly noted that our decision was influenced by the law that a tenured teacher "has an expectation of continued employment that is in the nature of a property interest and must, therefore, be afforded certain elemental due process rights before being deprived of that interest." *Id.* at 1170 n. 7. We concluded that "[i]f some lesser interest were involved, our conclusion might be different." *Id.* *Rosen* overruled *Crisp* "[i]nsofar as *Crisp* purports to establish a rule of law applicable to all cases where there exists the right or opportunity for a *de novo* review of an administrative proceeding, or where an important right is being asserted...." *Id.* at 482.

We decline to apply *Crisp* in this case because we do not believe that the strict application of Rule 82 violated Van Huff's due process rights.

■ We also reject Van Huff's argument that the attorney's fee award was excessive.[8] As Sohio notes, a large fee was required because the case was actively pending for over five years, there was extensive pretrial discovery, numerous complex legal issues were briefed and argued before the trial court, the trial lasted thirteen days, and Sohio won a total victory in the case. Judge Hunt therefore did not abuse her discretion in awarding 30 percent of Sohio's actual fees, particularly when one considers that Van Huff opposed Sohio's request for 60 percent of its actual fees with a request that the court award 20 percent of the actual fees.[9]

AFFIRMED.

MATTHEWS, Justice, with whom COMPTON, Justice, joins, dissenting in part.

In the dissenting opinion which I wrote in *Bozarth v. Atlantic Richfield Oil Company, Inc.*, 833 P.2d 2 (1992), I cited the superior court decision in the present case as an example of a disturbing trend of awarding financially ruinous attorney's fees against good faith losing litigants. Accordingly, and for the reasons expressed in my dissent in *Bozarth*, I would reverse the award of $117,251 in attorney's fees against Van Huff and remand for entry of an award calculated with due consideration to the right of access to the courts.

---

8. "The power to award attorney's fees is within the discretion of the trial court, and this court will not interfere absent a clear abuse of discretion." *Stevens v. Richardson*, 755 P.2d 389, 396 (Alaska 1988).

9. Van Huff does not argue on appeal that Sohio's counsel billed excessive attorney hours or exaggerated its actual attorney's fees. Van Huff raised these arguments before the trial court.