**Loren J. LARSON, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8208.

Court of Appeals of Alaska.

Oct. 24, 2003.

---

**20.** *State v. Joubert,* 20 P.3d 1115, 1118 (Alaska 2001).

**21.** *Id.*

**22.** *Id.*

**652**

James H. McComas, Anchorage, for the Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

In early 2000, this Court affirmed Loren J. Larson's convictions on two counts of first-degree murder and one count of burglary.[1] A little over one year later, Larson filed a petition for post-conviction relief in which he alleged that several members of his jury had engaged in misconduct during his trial.

Specifically, Larson asserted that several jurors violated the trial judge's instructions by (1) forming and announcing opinions about Larson's guilt before the case was submitted to the jury, (2) discussing the merits of the case with other jurors before the case was submitted to the jury, and (3) relying on their own personal knowledge (rather than evidence presented at trial) concerning how loud a shot from a .22 caliber rifle would be, and concerning the breakage characteristics of glass used in construction vehicles. In addition, Larson asserted that several jurors improperly declared or apparently agreed (4) that Larson's decision not to testify was an indication that Larson was guilty, and (5) that Larson's wife's absence from the courtroom was an indication that she believed Larson was guilty.

But Larson faced a legal problem: His assertions of juror misconduct were supported solely by the affidavits of jurors. (The affidavits were supplied by some of the jurors who decided Larson's case, as well as the two alternates who sat through the trial but were then excused as deliberations commenced.) Alaska Evidence Rule 606(b) states that, generally, a litigant can not rely on juror affidavits to attack a jury verdict. Rule 606(b) contains only two exceptions: an attack on a jury verdict can be supported by juror affidavits only when those affidavits are offered to prove (1) that "extraneous prejudicial information was improperly brought to the jury's attention" or (2) that "[some] outside influence was improperly brought to bear upon any juror". The superior court concluded that the alleged jury misconduct in this case did not fall within either of these exceptions, and that Evidence Rule 606(b) therefore prohibited Larson from relying on the juror affidavits. Accordingly, the court dismissed Larson's petition for post-conviction relief.

Larson now challenges the superior court's ruling. His primary argument is that Evidence Rule 606(b) prohibits the use of juror affidavits to attack a verdict only when those affidavits describe misconduct that occurred *during*—not before—the jury's formal deliberations. Larson contends that Rule 606(b) does not apply to the juror affidavits he presented in his case, because these affidavits describe misconduct that occurred before his case was submitted to the jury.

Larson further argues that when jurors blatantly violate their oaths and their duties as jurors, they lose their status as "jurors" and instead become an "outside influence"—

---

1. *See Larson v. State,* Alaska App. Memorandum Opinion No. 4171 (January 12, 2000); 2000 WL 19199.

thus making evidence of their misconduct admissible under the provision of Rule 606(b) that allows the use of juror affidavits to prove (or disprove) that "any outside influence was improperly brought to bear upon any juror".

Finally, Larson contends that the alleged juror misconduct in his case was so egregious that, if the allegations are true, this misconduct constituted an obstruction of justice and a denial of due process. Accordingly, Larson argues that he has a right (either as a matter of state law or as a matter of federal constitutional law) to use juror affidavits to prove his allegations of juror misconduct, despite the general prohibition contained in Evidence Rule 606(b).

For the reasons explained here, we reject Larson's construction of Evidence Rule 606(b). We hold that the admissibility of juror affidavits under Rule 606(b) turns on the *type* of impropriety they describe, not the timing of that impropriety. Because the juror affidavits in Larson's case describe matters that "inhere" in the jury's decision-making process (a concept that we explain in this opinion), Evidence Rule 606(b) bars the use of these affidavits.

■ We further reject Larson's argument that jurors who engage in misconduct cease being "jurors". Finally, we hold that the application of Evidence Rule 606(b) to Larson's case does not deprive him of due process of law or any other constitutional right. Accordingly, we conclude that the superior court was correct when it dismissed Larson's petition for post-conviction relief.

*The rule at issue in this case: Alaska Evidence Rule 606(b)*

The two subsections of Alaska Evidence Rule 606 define the situations in which litigants are barred from offering the testimony or affidavits of jurors. Evidence Rule 606(a) states that jurors are barred from testifying as witnesses at the trial they are judging. Evidence Rule 606(b) addresses the question of whether a litigant can offer juror testimo-

ny or juror affidavits to attack a jury's decision (or defend the decision from attack):

(b) *Inquiry Into [the] Validity of [a] Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

■ The first thing to note is that Evidence Rule 606(b) does not apply when the issue of potential jury misconduct is litigated before the jury returns its verdict. The rule prohibits the use of juror testimony and juror affidavits in "an inquiry into the validity of a verdict", but it does not restrict the use of this evidence when the court investigates potential juror misconduct before the jury renders its decision.

Turning to post-verdict inquiries, Evidence Rule 606(b) declares that juror testimony and juror affidavits can not be offered for any of these purposes: (1) to prove "any matter or statement occurring during the course of the jury's deliberations", or (2) to prove "the effect of any matter or statement upon that [juror's] or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict", or (3) to prove "the juror's mental processes in connection therewith" [*i.e.*, in connection with the juror's decision to assent to or dissent from the verdict].[2]

**2.** *See Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), in which the Court gave this same construction to the word

"therewith" in Federal Evidence Rule 606(b), the counterpart to our rule. In particular, see Jus-

Rule 606(b) declares that there are two exceptions to the prohibitions described in the preceding paragraph. According to the rule, juror testimony and juror affidavits can be offered on the issues of (A) "whether extraneous prejudicial information was improperly brought to the jury's attention", or (B) "whether any outside influence was improperly brought to bear upon any juror".

In practice, however, Rule 606(b) has been interpreted so that these two exceptions apply only to the first prohibition—the prohibition on the use of juror testimony or juror affidavits to prove "any matter or statement occurring during the course of the jury's deliberations". That is, juror testimony and juror affidavits can be offered to prove or disprove the *occurrence* of the improper events described in the two exceptions—jurors' receipt of "extraneous prejudicial information", or the subjection of jurors to "outside influence"—but Rule 606(b) still bars juror testimony and affidavits when offered to prove the *effect* of these events on the jurors' mental processes. *Swain v. State*, 817 P.2d 927, 932–33 (Alaska App.1991).

In his petition for post-conviction relief, Larson offered juror affidavits to prove (1) that some jurors formed and announced opinions about Larson's guilt during the trial, before the case was submitted to the jury, (2) that some jurors discussed the merits of the case before the case was submitted to the jury, (3) that some jurors viewed Larson's decision not to testify as an indication of his guilt, and (4) that some jurors viewed Larson's wife's absence from the trial as an indication that she believed Larson was guilty. None of these allegations appear to fall within the two exceptions specified in Rule 606(b)—the exceptions for "extraneous prejudicial information" and "[improper] outside influence".

Larson also offered juror affidavits to prove (5) that one or more jurors reached their decision by relying on information beyond the evidence presented at trial—specifically, jurors' personal knowledge of how loud a shot from a .22 caliber rifle would be, and jurors' personal knowledge concerning the breakage characteristics of glass used in construction vehicles. One could potentially argue that these jurors' personal knowledge constituted "extraneous prejudicial information". However, the Alaska Supreme Court rejected this interpretation of Rule 606(b) in *Titus v. State*, 963 P.2d 258 (Alaska 1998).

In *Titus*, the supreme court held that a juror's "pre-existing ... knowledge of a general nature" does not constitute "extraneous prejudicial information" for purposes of Rule 606(b). *Id.* at 262. The court declared that "a juror who discusses his or her general knowledge during deliberations, such as a familiarity with x-ray technology, has not introduced extraneous prejudicial information into the jury room". *Id.* Accordingly, even if Larson's jurors discussed their personal knowledge of the characteristics of .22 caliber firearms and construction-vehicle glass, this would not fall within the exceptions listed in Rule 606(b).

Larson nevertheless offers two arguments why the juror affidavits are admissible despite Evidence Rule 606(b)'s apparent bar.

First, Larson argues that Rule 606(b) applies only to evidence concerning what was said and done during the jury's formal deliberations—*i.e.*, what was said and done after the trial judge instructed the jury and directed them to decide the case. Larson contends that the alleged juror misconduct in his case can be established through juror affidavits because that misconduct occurred before the jury's formal deliberations.

Second, Larson argues that if any of the jurors engaged in the types of misconduct he alleges—forming opinions concerning Larson's guilt or innocence before the trial was over, discussing the merits of the case before the judge ordered the jury to begin its formal deliberations, and holding Larson's failure to testify against him—then these jurors forfeited their status as "jurors" and became, in effect, "outside influences". Thus, Larson argues, their misconduct falls within one of Rule 606(b)'s listed exceptions—so that the rule allows the misconduct to be proved by juror testimony or juror affidavits.

tice Marshall's dissenting opinion, 483 U.S. at 140, 107 S.Ct. at 2757.

■ (Because Larson relies in part on the affidavits of two alternate jurors, one additional question is potentially raised by Larson's case: whether Evidence Rule 606(b) applies to evidence offered by alternate jurors as well as evidence offered by the jurors who ultimately decide the case. Both Larson and the State assume that Rule 606(b) applies to alternate jurors, and our limited research on this issue supports the parties' position. *See State v. Reiner*, 89 Ohio St.3d 342, 731 N.E.2d 662, 670–73 (2000). We therefore assume, for purposes of this case, that Evidence Rule 606(b) governs testimony or affidavits supplied by alternate jurors.)

*Evidence Rule 606(b) applies to the allegations of juror misconduct in Larson's case, even though that misconduct occurred before the jury commenced its formal deliberations*

■ Larson's first argument—that Rule 606(b) does not cover juror misconduct that occurs before formal deliberations—finds some support in the wording of the rule. The rule states that when the validity of a verdict is at issue, "a juror may not be questioned as to any matter or statement occurring *during the course of the jury's deliberations*". (Emphasis added.) This same phrasing in the federal counterpart to our rule, Federal Evidence Rule 606(b), led four members of the United States Supreme Court—the dissenters in *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987)—to conclude that Federal Evidence Rule 606(b) should be interpreted to permit juror testimony or juror affidavits dealing with events that occurred during the trial, before formal deliberations began. *See Tanner*, 483 U.S. at 138–140, 107 S.Ct. at 2757–58 (Marshall, J., dissenting).

However, the dissenters' view of the rule did not carry the day. The *Tanner* majority decided that Federal Evidence Rule 606(b) precluded the post-verdict use of juror testimony or juror affidavits alleging misconduct that occurred during the trial—specifically, the allegation that certain jurors drank excessive amounts of alcoholic beverages during the jury's lunch breaks and became so intoxicated as to be unable to meaningfully follow the progress of the trial.[3] The *Tanner* court noted that Rule 606(b) does not preclude jurors from "report[ing] inappropriate juror behavior to the court *before* they render a verdict" (emphasis in the original)[4], nor does the rule preclude litigants from later "seek[ing] to impeach the verdict by non[-]juror evidence of misconduct".[5] But the *Tanner* majority held that this misconduct could not be proved by juror testimony or affidavit after the verdict.

The federal courts who have addressed this issue after *Tanner* have been reluctant to construe Federal Evidence Rule 606(b) in a way that would completely preclude post-verdict inquiry into the jury's internal decision-making, particularly if there were strong evidence that the jury's decision was the direct product of overt racial bias. *See Shillcutt v. Gagnon*, 827 F.2d 1155 (7th Cir.1987), and Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence Manual* (8th ed.2002), Vol. 3, pp. 606–5–606–6 and 606–13–606–14.

But the federal cases are virtually unanimous in rejecting post-verdict attacks based on allegations of the types presented in Larson's case—*i.e.*, allegations that jurors prematurely discussed the merits of the case, or prematurely formed opinions about the defendant's guilt or innocence. As the District of Columbia Circuit noted in *United States v. Williams–Davis*, 90 F.3d 490 (D.C.Cir.1996), the precise legal basis of these federal decisions "is slightly obscure".[6] However, it seems that all of the federal courts agree "that even if [Federal Evidence] Rule 606(b) does not actually bar receipt of [juror] evidence of pre-deliberation discussions, a trial court is virtually automatically justified in declining to pursue such an inquiry".[7] See the cases discussed in *Williams–Davis*, 90 F.3d at 504–05, and *United States v. Gigante*, 53 F.Supp.2d 274, 276–77 (E.D.N.Y.1999).

3. *Id.*, 483 U.S. at 125–27, 107 S.Ct. at 2750–51.

4. *Id.*, 483 U.S. at 127, 107 S.Ct. at 2751.

5. *Id.*

6. 90 F.3d at 504.

7. *Id.*

Larson urges us to construe Alaska's Rule 606(b) in a different way, by adopting the approach of the *Tanner* dissenters and holding that Rule 606(b) speaks solely to events that occur during a jury's formal deliberations. One state court has interpreted its rule in this fashion: *see State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354 (2000).

Although Larson's suggested interpretation of Evidence Rule 606(b) is tenable, we conclude that it must be rejected because it leads to results that are incompatible with the policies underlying Rule 606(b).

■ As our supreme court acknowledged in *Titus v. State*, Alaska Evidence Rule 606(b) represents a compromise between competing values. On the one hand, we must take steps to ensure "that verdicts are accurate and that they are reached through a fair process".[8] On the other hand, the health of the jury system requires that we take steps "to protect jurors from harassment, to encourage free jury deliberation, and to promote the finality of verdicts".[9] The commentary to Evidence Rule 606(b) expands on these themes:

Allowing inquiry into the mental operations and emotional reactions of jurors in reaching a given verdict would invite constant review.... Moreover, even without [post-verdict] pressure by [attorneys] or litigants, many jurors are likely to have second thoughts about their verdicts after they are excused by the Court and the influence of fellow jurors dissipates. Such second thoughts might cause jurors to question their verdicts if permitted to do so. Yet these polic[ies] are not promoted by a blanket prohibition against inquiry into irregularities [resulting] from prejudicial extraneous information or influences injected into or brought to bear upon the deliberative process.

The line between what is the proper subject of subsequent inquiry and what is to be insulated from review is a fine one.... Hard cases remain[,] and [these] must be decided with [the] policies underlying the rule in mind: to insulate the deliberative process and to promote the

finality of verdicts while not foreclosing testimony as to ... extrinsic forces erroneously injected into the process.

Commentary, Evidence Rule 606(b), excerpted from paragraphs two, three, and five.

The approach taken by the *Tanner* dissenters—allowing unrestricted inquiry concerning any events or statements that occurred before the jury commenced its formal deliberations—may have seemed harmless enough under the facts of *Tanner*, where it was alleged that several jurors became too intoxicated to meaningfully follow the progress of the trial. But the allegations raised in Larson's case—allegations that some jurors discussed the evidence and formed opinions about the case before the jury began its formal deliberations—demonstrate the dangers of this approach.

Although we instruct jurors to completely withhold judgement until they have heard all the evidence, the summations, and the jury instructions, a moment's reflection will show that this is all but impossible. As the evidence is presented and the attorneys' litigation strategies become clear, thinking jurors will inevitably form at least tentative opinions concerning the credibility of various witnesses and the relative strength of the litigants' positions. The real point of our admonition is to make sure that jurors keep an open mind—to make sure that their opinions remain tentative—until the entire case has been presented and the jurors have heard the trial judge's instructions.

In the same vein, although jurors are admonished to refrain from discussing the case until their formal deliberations commence, we have no doubt that there are many trials in which one or more members of a jury prematurely remark on the credibility of the testimony they have heard or express some opinion about the anticipated outcome of the case.

These deviations from proper procedure do not suggest that the ensuing deliberations are tainted or that the resulting verdict should be distrusted. Even though impro-

8. *Titus v. State,* 963 P.2d at 261.

9. *Id.*

prieties of these types may have occurred, they do not undermine the jury's ability to ultimately render a fair decision based on the evidence and the jury instructions.

Indeed, in *Hancock v. Northcutt*, 808 P.2d 251 (Alaska 1991), the Alaska Supreme Court rejected a litigant's request for a new trial based on similar jury misconduct. Although the court's opinion does not describe the details of the alleged juror misconduct, an examination of Hancock's brief[10] shows that one of his claims of misconduct was that a specified juror, "contrary to [the trial judge's] repeated instructions ..., made up his mind [about the case] before the close of [the] evidence". The supporting affidavit—supplied by the errant juror himself—disclosed that "at a particular point in [the] trial" this juror had already decided that the Northcutts should be awarded damages.[11]

The supreme court ruled that this juror's evidence (as well as other jurors' evidence) was barred by Evidence Rule 606(b):

> The [juror] affidavits ... detail the jurors' mental processes and do not demonstrate that there was any outside influence improperly brought to bear on any juror or that extraneous prejudicial information was improperly brought to the jury's attention. Thus the [superior] court did not err in refusing to grant a new trial on this basis. *See West v. State*, 409 P.2d 847, 852 (Alaska 1966); Evidence Rule 606.

*Hancock v. Northcutt*, 808 P.2d at 259.

Similarly, in *Poulin v. Zartman*, 542 P.2d 251, 264–65 (Alaska 1975), the supreme court rejected the notion that a litigant could obtain a new trial by showing that one or more jurors "develop[ed] a like or dislike for one side during [the] trial [that] may [have] affect[ed] the way that juror vote[d] in the jury room".[12] The court ruled that these types of juror emotions "inhere[ ] in the verdict"—that is, they are part of the jurors' internal

decision-making process, and they do not constitute a serious violation of the jurors' duty.[13] The supreme court decided that allowing verdicts to be impeached on such grounds would lead to "folly and chaos".[14]

We conclude that we would achieve these same unfortunate results if we construed Evidence Rule 606(b) as Larson suggests. If litigants were permitted to mount the kinds of post-trial attacks on a jury verdict that Larson raises here, few verdicts would be safe from challenge. Alternate jurors who disagreed with the jury's decision, or regular jury members who later regretted their decision, could attack the verdict based on passing comments made in hallways, restrooms, and lunch rooms during the trial—comments that might well have been rebutted or forcefully criticized by fellow jurors if repeated during formal deliberations. Another danger pointed out by the District of Columbia Circuit in *Williams–Davis* is that, if evidence of premature deliberations were permitted under Rule 606(b), this "would place a powerful weapon in the hands of a juror who senses that his viewpoint is not shared by his fellows—deliberate promotion of pre-deliberation conversations".[15]

With regard to the other types of improprieties alleged by Larson—jurors' holding Larson's failure to testify against him, or holding Larson's wife's failure to attend the trial against him, or urging the other jurors to speed up their deliberations so that jury service would not interfere with a particular juror's personal plans—the law is settled that Evidence Rule 606(b) bars jurors from giving evidence on these matters if the alleged improprieties occurred during the jury's formal deliberations. Thus, for example, Federal Evidence Rule 606(b) bars the receipt of juror affidavits alleging that, during deliberations, some jurors declared that the defendant's failure to take the stand was evidence of the defendant's guilt.[16]

---

**10.** File No. S–3470, Appellant's Brief filed April 26, 1990.

**11.** Appellant's Brief at page 48.

**12.** 542 P.2d at 264.

**13.** *Id.* at 264–65.

**14.** *Id.* at 265.

**15.** *Williams–Davis*, 90 F.3d at 505.

**16.** *See United States v. Tran*, 122 F.3d 670, 673 (8th Cir.1997); *United States v. Rodriquez*, 116 F.3d 1225, 1227 (8th Cir.1997); *United States v. Martínez–Moncivais*, 14 F.3d 1030, 1036–37 (5th Cir.1994); *United States v. Voigt*, 877 F.2d 1465,

Likewise, Federal Evidence Rule 606(b) bars juror assertions that the jury reached its decision through compromise [17] or hastened its verdict to avoid interfering with a juror's vacation plans.[18] The Alaska Supreme Court reached a similar decision in *Van Huff v. Sohio Alaska Petroleum Co.*, 835 P.2d 1181 (Alaska 1992).

Van Huff sued Sohio Alaska Petroleum Company for unlawful termination of his employment, but the jury found in Sohio's favor. 835 P.2d at 1182–83. In a motion for a new trial, Van Huff presented a juror affidavit tending to prove that one juror, Randall Butts, expressed frustration that jury deliberations were taking so long. According to Van Huff's offer of proof, Butts told the other jurors that he was about to begin a new job and that he wanted the jury to reach a decision by Monday. At least one juror believed that Butts switched his vote simply to facilitate the jury's reaching a quick decision. *Id.* at 1184.

The superior court denied Van Huff's motion for a new trial, and the supreme court upheld the superior court's decision on appeal. The supreme court ruled that even if the allegations were true, Butts's alleged bias and potential misconduct did not invalidate the jury's verdict because these actions did not constitute "severe jury misconduct"— which the supreme court defined as "fraud, bribery, forcible coercion[,] or obstruction of justice". *Id.* at 1188.

Larson argues that even though Evidence Rule 606(b) prohibits a party from relying on juror testimony or juror affidavits to prove that such matters occurred during the jury's deliberations, Rule 606(b) should nevertheless be construed to permit juror evidence on these issues if the challenged conduct occurred before the jury commenced its deliberations. But Larson's interpretation of

Rule 606(b) would undermine the values of the rule.

■ As explained above, Rule 606(b) is designed to insulate jury verdicts from post-trial challenges based on matters that "inhere" in the jury's decision-making process— by generally prohibiting jurors from giving post-verdict evidence except on the subjects of whether the jury received extraneous prejudicial information or was subjected to improper outside influence. If the types of misconduct that Larson alleges had occurred during the jury's formal deliberations, it is clear that Rule 606(b) would bar any juror testimony or affidavits on these subjects. This is not because we condone the misconduct of jurors who openly proclaim that a defendant's failure to testify indicates the defendant's guilt, or who care more about their personal schedule than their duty to do justice. Rather, Rule 606(b) represents the value judgement that subjecting jury verdicts to these types of post-trial attacks would work more harm than good.

When jurors make these same types of improper statements before the jury begins its formal deliberations, their misconduct is less likely to cause injustice than if the statements had been uttered during deliberations. And yet Larson argues that Rule 606(b) should allow jurors to impeach their verdicts under these circumstances of lesser danger, even though circumstances of greater danger are insulated from attack. Moreover, Larson's interpretation of the rule would open many verdicts to attack based on jurors' spontaneous exclamations or passing comments.

We also note that, even though the first clause of Rule 606(b) speaks of "matter[s] or statement[s] occurring during the course of the jury's deliberations", the next two clauses of the rule have no apparent temporal limitation. Rule 606(b) declares that jurors may

1469 (10th Cir.1989). *Accord, State v. DeGrat,* 128 Idaho 352, 913 P.2d 568, 570–71 (1996) (construing the corresponding state evidence rule).

**17.** *See United States v. Straach,* 987 F.2d 232, 241 (5th Cir.1993) (two jurors asserted that they wished to declare the defendants innocent of all charges, but they were pressured into a compro-

mise vote of "guilty" on two of the counts); *United States v. Campbell,* 684 F.2d 141, 150–51 (D.C.Cir.1982) (one juror allegedly told the group that she would go along with any unanimous decision reached by the other eleven).

**18.** *See United States v. Murphy,* 836 F.2d 248, 256 (6th Cir.1988).

not be questioned concerning "the effect of any matter or statement upon ... any ... juror's mind or emotions as influencing the juror to assent to or dissent from the verdict", nor may jurors be questioned "concerning [a] juror's mental processes in connection [with the juror's decision to assent to or dissent from the verdict]".

In the end, we are guided by the concluding sentence of the commentary to Alaska Evidence Rule 606(b), which states that Rule 606(b) should be interpreted so as to preserve and advance the policies underlying the rule: insulating the jury's deliberative process and promoting the finality of jury verdicts, while not foreclosing post-verdict attacks if external forces have erroneously been injected into the deliberative process.

In view of these policies, and in view of the case law discussed here, we conclude that Evidence Rule 606(b) precludes Larson from offering juror testimony or juror affidavits to support the assertions of juror misconduct described in his petition for post-conviction relief.

For these same reasons, we reject Larson's argument that jurors who engage in such misconduct forfeit their status as "jurors" and should be viewed as external influences on the jury.

*Evidence Rule 606(b) does not deny Larson his constitutional right to due process of law*

■ Larson argues that if we construe Evidence Rule 606(b) to preclude juror testimony and juror affidavits on the allegations of misconduct he raised in his petition for post-conviction relief, then Rule 606(b) infringes his right to due process of law—by barring him from presenting evidence that the jury unjustly convicted him.

As we noted earlier, some federal courts have shown reluctance to enforce Rule 606(b) strictly when there is strong evidence that the jury's verdict was the direct product of racial prejudice. However, to our knowledge, no court has ever held that Rule 606(b) is unconstitutional to the extent that it bars juror evidence of the types of misconduct at issue in Larson's case.

Larson cites no cases that have accepted his constitutional attack on Evidence Rule 606(b). Indeed, several courts have recently upheld their versions of Rule 606(b) against constitutional challenge:

*Williams v. Price*, 343 F.3d 223, 230 (3rd Cir.2003) ("*Tanner* strongly suggests that the exclusion of evidence of juror misconduct pursuant to the traditional 'no impeachment' rule is constitutional because of the important purposes that the rule has long been recognized as serving."); *United States v. Griek*, 920 F.2d 840, 843 (11th Cir.1991); *Maldonado v. Missouri Pacific Railway Co.*, 798 F.2d 764, 770 (5th Cir.1986); *Miles v. State*, 350 Ark. 243, 85 S.W.3d 907, 913 (2002); *People v. Steele*, 27 Cal.4th 1230, 120 Cal.Rptr.2d 432, 47 P.3d 225, 245–47 (2002); *State v. DeGrat*, 128 Idaho 352, 913 P.2d 568, 570 (1996); *State v. Workman*, 111 S.W.3d 10, 20–21 (Tenn.Crim.App.2002); *Glover v. State*, 110 S.W.3d 549, 551–52 (Tex.App. 2003); *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 374–75 (Tex.2000).

We therefore reject Larson's assertion that Evidence Rule 606(b) violates his constitutional rights to the extent that it precludes the kind of juror evidence he offered in his petition for post-conviction relief.

*Larson's claim that he should have been allowed to proceed on his assertions of juror bias*

■ Larson argues that even if the juror affidavits supporting his petition for post-conviction relief are precluded by Evidence Rule 606(b), so that he had no admissible evidence of juror misconduct, he still should have been allowed to pursue his claim that some of the jurors were biased against him and willfully concealed that bias when they answered questions during jury selection.

■ Under the supreme court's holding in *Poulin v. Zartman*, 542 P.2d at 264–65, the fact that some jurors became biased against Larson *during* the trial is not a ground for attacking the verdict. The rule is different, however, with regard to a juror's deceit during jury selection. Juror testimony or affidavits are admissible to prove that jurors falsely denied pre-existing bias during

jury selection. *See Poulin v. Zartman,* 542 P.2d at 264.

But Larson's claim of pre-existing bias is based solely on his allegations of juror misconduct during the trial. Larson's theory is that if the jurors improperly expressed a belief in his guilt during the trial, or if they expressed a wish for a quick verdict, they must have been biased against him from the time they were first called as potential jurors, and they therefore must have hidden this bias during jury selection.

For example, in Larson's brief, he argues that a *prima facie* case of Juror Hayes's pre-existing bias was shown by the fact that even though Hayes stated during jury selection that he could be fair, that he would assume Larson's innocence, and that he would follow the trial judge's instructions, Hayes later violated the judge's instructions by announcing (during trial, before the jury began its formal deliberations) that he believed Larson was guilty. Thus, Larson's claim of pre-existing juror bias is based on the speculation that any adverse opinion expressed by jurors *during* his trial must have been rooted, not in the events of the trial, but rather in those same jurors' pre-existing bias against him before the trial began.

But Larson presented no evidence to suggest that this was true. We therefore conclude that the superior court correctly dismissed this portion of Larson's petition for post-conviction relief for failure to state a *prima facie* case.

*Conclusion*

The judgement of the superior court is AFFIRMED.